Good morning. May it please the court, Mariah Radin on behalf of appellant Manuel Moreno Valdez. The trial court abused its discretion when it relied on prison movement documents to determine that a parole revocation had occurred in Mr. Moreno's 1996 case. There are three reasons why. The first is that the question before the court was whether a parole revocation had occurred. The movement documents were not intended and could not answer that question. I thought the issue though on the determination of whether or not the adjustment applies is whether or not the defendant was still under a sentence within 15 years of the date of the subsequent offense. Mariah Radin The 15 year period extends from the time of the current underlying offense preceding 15 years if a person was in custody for any portion of that period. Judge Goldberg Right. And the district court, as I understand it, looked at the prison movement records of the Department of Corrections to conclude that he was in fact in prison within that 15 year time frame. Is that right? Mariah Radin It is correct, Your Honor, but the question was not merely was Mr. Moreno in custody. He had to have been in custody specifically for a parole revocation. Judge Goldberg Well, let's do this one step at a time because as I understand it, the record, the objection that was raised was essentially to the reliability of the record that the district court, he didn't deny that he'd been initially convicted and had gone to prison. The question was, or that he'd been paroled from the initial prison sentence. The question was whether or not he was in custody as a result of some subsequent conduct, which in this case was a parole revocation, and apparently he'd had a couple of problems with his parole officer during the period of his parole. Do I understand what the court was trying to determine? Mariah Radin I believe there are aspects of that that I would agree with. He did not dispute the 1996 conviction. I don't believe there's any record of any problems on parole that was set forth in the pre-sentence report. The court was determining whether he was in custody on the 1996 case, which otherwise would have been too stale to have garnered any criminal history points. Judge Goldberg And under California law, the parole term is considered a part of your sentence, is it not? In other words, you're not discharged from custody when you are released from prison on parole. In essence, it's a change in the form of your custody. Your parole officer becomes your jailer. Mariah Radin Your sentence may continue, but for guidelines purposes, you must actually be in custody within that period. Judge Goldberg I understand that, but I'm just trying to... Lace, these are not trick questions. I'm just trying to make sure that I understand how the California system works. Mariah Radin I hope I have enough knowledge as well. I do believe it is part of the sentence. You are not discharged when you leave custody. Your parole... Judge Goldberg And as you said earlier, he didn't dispute the fact, yes, in 1996, I was convicted and I did go to prison. So then the question becomes, was he still serving any part of that prison sentence within 15 years of his new federal conviction? That's why we're here, is it not? Mariah Radin I believe if the question was, was he in custody as a part of that sentence? All right. Now, can I direct your attention to ER 69, please? Now, you have to read from the bottom of the page up because chronologically that's how it proceeds. The entry of August 30th, 1996 says paroled. But then if you go up to February 19th, 1998, it says returned. And below that it says RET from parole, RET status pending review, as I read it. And then at 4-0-8-98, it says status changed. And then the initials are to PRTC. Now, I used to be a Superior Court judge in San Francisco for my sins. And PRTC looks to me like prisoner returned to custody from pending review. Why is that not sufficient circumstantial evidence for the sentencing judge to have found that Mr. Moreno-Valdez was indeed in custody on April 8th, 1998, within 15 years of the commission of the subject crime? Mariah Radin There are a few reasons, Your Honor. Okay. I want to hear them. Mariah Radin The first would be that it is not just whether he was in custody. It must be answered whether the Are you agreeing with me, with my reading that he was in custody in April of 1998? Mariah Radin Yes. Judge Goldberg Okay. That's one thing out of the way. All right. Now, why do you say that the record is insufficient to show that he was in custody, account the 1996 conviction? Mariah Radin Because this is a prison movement document which tracks a prisoner's location. It does not track judicial proceedings or parole board hearings or adjudications in cases. It does not refer to a sentence, a violation date, a notice, nothing about the proceedings that we know would occur in a parole revocation. The challenge here is basically to the reliability of the records that the district court relied on. Is that it? Mariah Radin That's correct, Your Honor. I believe I argued both, also whether it met a burden of proof, but the thrust of the argument is the reliability of these documents. Judge Goldberg We begin with the proposition that the federal rules of evidence don't apply to pre-sentence reports, that the district court is entitled to rely on any reliable information in fashioning an appropriate sentence. Mariah Radin Correct. Judge Goldberg So under that loose evidentiary framework, what's wrong with relying on the same records that the California Department of Corrections relies upon to track the movements of the 200,000 inmates within its care? Mariah Radin I agree it's a loose standard, but it's also a due process requirement that the evidence be reliable. And this court has examined what are reliable documents to be used to prove criminal history. Judge Goldberg Is there any question that this is a legitimate public record, a business record of the Department of Corrections? Mariah Radin I don't believe there was any evidence regarding what this document is, how it's maintained. Judge Goldberg I thought the probation officer had referenced this material in a couple of the paragraphs of the pre-sentence report, and then there was a hearing, and the district court said, well, Mr. or Ms. Probation Officer, show counsel the records that you're relying on. Mariah Radin You're correct. This was used by the probation officer to prepare the pre-sentence report. Judge Goldberg Getting back to the questions I asked you earlier about the California parole system, since we know from the way that that system operates that parole officers have the right to revoke, if you will, the liberty of the people that they are supervising and to return them to custody, what's wrong with relying on this record that suggests that that's exactly what happened here beginning on February 19 of 1998 when he was returned from parole pending a review of his status? Mariah Radin I think the problem is that it doesn't... Judge Goldberg Let me just interrupt for just a second. What is it you're looking at? Mariah Radin I am still referring to what Judge Mayer referred me to. Judge Goldberg Is it this one here with all the detailed notes? Mariah Radin That's correct. Judge Goldberg Okay. Mariah Radin There's two different sections. Judge Goldberg Yeah. It's not the other one with just a few entries on a blank piece of paper. It's this two-page... Just look here. This page? Mariah Radin Yes, I have that one. Judge Goldberg And this page, right? Mariah Radin Yes, Your Honor. Judge Goldberg Yeah, those two. Okay. You're not looking at that other one? Mariah Radin The computer printout.  Yeah, the computer printout. Mariah Radin Well, both were provided as one document. Judge Goldberg So the district court was looking at all of these records? Mariah Radin Correct. Judge Goldberg Yeah, but isn't this one here where the external movements are shown? Isn't that easier to follow? Mariah Radin I don't think either one is particularly easy to follow. Judge Goldberg Well, whatever it is, you know, easier than the other. Mariah Radin Easier than the other. Judge Goldberg All right. So you're starting out with... We're looking... I'm looking at this one. You may be looking at another one. So we're starting out with April. What was the date we started out? Mariah Radin April 8th, 1998 was the one I started. Judge Goldberg Well, what page are we looking at? That's ER-76. Mariah Radin I'm looking at this one. Judge Goldberg Right. I was looking at ER-59, but it's the same thing. Mariah Radin Yeah. All right. ER-74. Judge Goldberg Is there any other reason he would have been in custody? Mariah Radin I'm not through. Judge Goldberg Oh, okay. Mariah Radin Yeah, I'm not through. Let's look at this one. All right. These two for a minute. Where are you starting on these two? Mariah Radin Wherever you direct me to, Your Honor. I have them both. Judge Goldberg If you're going to make your argument, what are you going to use? Mariah Radin Based on these, I would say they don't refer to the 1996 case, and there is another reason he could have been in custody. So while I recognize what the language- Judge Goldberg Then refer to the 1996 case right at the bottom. One of one. Mariah Radin For the date on which he was- Judge Goldberg There's a whole bunch of 96 cases down there. Mariah Radin Right, and that was-  Judge Goldberg I see that, Your Honor, and that is when he was convicted. Mariah Radin Right, and then this tracks all of his movements- Judge Goldberg All of his moves. Mariah Radin From that conviction within the California prison system. Judge Goldberg There is, I think my point would be that there is no evidence that it is related to a particular case, and there is another reason he could have been in custody, because he was arrested in 97 and convicted in 98. But he got probation for two years and 25 days on that 1997 conviction. 25 days on the conviction doesn't get you to April 1998. Mariah Radin But, Your Honor, I don't know that we know what got us to April. There's no evidence showing what occurred or that parole could have been revoked. Judge Goldberg But we know that this is still within the period of the original sentence that was imposed on him in 1996. Mariah Radin Only if it relates to that case would it bring the 1996 case.  But look- Mariah Radin If it was an unrelated conviction- Judge Goldberg What other case do you have that, I mean, we have his rap sheet, did we not? His criminal history is reflected in the pre-sentence report. Mariah Radin And you're correct, it is, Your Honor, and there's a conviction in February of 1998. Judge Goldberg Okay.  Which would not garner any points because it would- That's February the 19th, 1998? Mariah Radin That was, I believe he was sentenced on February 13th, 1998. Judge Goldberg Are you aware of any cases where the other ones, as I recall, used rap sheets? Mariah Radin That's correct. Judge Goldberg Is this a- Do you know of any cases other than this where rap sheets were not used, but these movement sheets were used? Mariah Radin In the Ninth Circuit, it would be a completely new holding. It has never been held that movement history could be used to prove criminal history.  Judge Goldberg The problem I have with your argument is, I hear your argument with regard to any one particular piece of paper, but the district court had before it the entire pre-sentence report, which outlines all the known convictions and even the known arrests that didn't result in convictions, and the Department of Correction prisoner movement records, and all the district court was trying to determine was whether or not he was still serving a custodial part of the sentence imposed on any of those convictions. Don't we have to look at these records in total as the district court was doing at sentencing to answer that question? Mariah Radin I believe that's accurate, but the only source for the parole revocation is these documents. It was not a part of a rap sheet, or the A file, or their docket sheet, or court documentation, or a parole board hearing. The only source of it is the movement history. So even if viewed together with the PSR, we have an alternative explanation for him to be in custody. Judge Goldberg Look, what you're saying is, if you look at external movements, it's not easy to figure this out. You look at February 19, 1998, return three, whatever that is, Pitchess, that's just detention center named after Pete Pitchess, says return from parole, and the reason there's pending revocation. So does that mean that there's a hearing pending on whether or not to revoke his parole? Mariah Radin We don't know. There's no evidence of that. Judge Goldberg Okay, then you don't know. Then we go to the next one above, 4-08-1998. Okay, he's still at the Pitchess Center. Movement type, status change, change from pending review to return to custody. So we're not sure why he was returned to custody. Was the parole revoked or what? That's what your argument is. Mariah Radin That's correct. Judge Goldberg We don't know. Mariah Radin That's correct, Your Honor. Judge Goldberg Okay. Mariah Radin And I think there's indications that this document is unreliable, because there are other mistakes. There is no certification. There are movement entries when he could not possibly have been in custody. So we know it's not an accurate document as to all of his movements. So to rely on it, to extend— Judge Goldberg What item here we're looking at on this ER-76 shows that, what did you just say? Mariah Radin The errors that I would point out— Judge Goldberg Where is it? Mariah Radin —are on ER-68 and 69.  What? 68 and 69? Mariah Radin Which were also sent from the Department of Corrections. Judge Goldberg It's not the two-piece of paper we're looking at? ER-76? Mariah Radin They track—they have different movements on them. So the one— Judge Goldberg So does that go to its weight or to its admissibility? Mariah Radin I believe it goes to its reliability and makes it unreliable for the court to rely on. Judge Goldberg I don't believe it ever had to be admitted into evidence. I think to be relied on, to be used for the purpose it was used as. Judge Goldberg In other words, what you're saying is, why do they put us all through this? Why don't they just put the rap sheet in? That would have been the end of it. Mariah Radin I would agree. Judge Goldberg Yeah. So that's, you know— Mariah Radin But don't we have the rap sheet in the—in essence, the summary of the rap sheet in the probation officer's presentence report? And nothing in that refers to a parole revocation. The only source of it is this document. Judge Goldberg Say that again. Mariah Radin The rap sheet— Judge Goldberg Well, that's not true. I'm looking at paragraph 9 at SER 4, where the probation officer references the fact that he was initially sent to the custody of the California Department of Corrections in 1998, paroled on August 26, 1998, discharged from parole on March 17 of 2000. Mariah Radin And I agree, Your Honor. I see that paragraph. The probation officer explained after defense counsel's objection that the source of that information was the California Department of Corrections documents. There was no other source of it. And that's at the sealed excerpt on page 16. And I will— Judge Goldberg The probation officer, in response to defense counsel's objection, wrote that the way she found out about a parole revocation, what she relied upon for drafting the PSR, were these documents that we're discussing, the Department of Corrections movement documents. That information was not drawn from a rap sheet, which this court has recognized to be a reliable source. Mariah Radin So it didn't come from a rap sheet? Judge Goldberg Correct, Your Honor. Mariah Radin It came from where again?  These movement documents that we've been examining. Mariah Radin The movement documents. So she was interpreting the movement documents. Judge Breyer Your position is that this incarceration could be attributed to the sentencing of February 13, 1998? Mariah Radin Correct, Your Honor, that it could be— Judge Breyer Think about that for a second. February 13, 1998. He got 25 days and two years probation for using false ID to a peace officer and driving without a license. Those are two misdemeanors, right? So he got two years probation. If he was in violation of probation on the misdemeanor, he would still be eligible for this enhancement, correct? Mariah Radin For the parole violation, you mean? Judge Breyer Yeah. Mariah Radin Probation violation. There's a difference. Judge Breyer I'm sorry, I'm not— Judge Breyer If he's in for a probation violation or for a parole violation if he's in custody, wouldn't he be eligible for the enhancement? Mariah Radin Well, if he's in for a probation violation, then it relates to an underlying conviction that was from 1998 that would not count. It is only if he was in custody on the 1996 conviction. Judge Breyer Why wouldn't it count? Why wouldn't the 1997 conviction count? Mariah Radin Because it has to have occurred within 10 years of the underlying offense unless the period of incarceration extended into—I'm sorry, the 15 years. Unless it extended into the 15 years. That conviction, the one you're discussing, did not garner any criminal history points. The date of that conviction was too old, the false identification. Judge Breyer  Mariah Radin Mariah Radin He was found to be in the country on what date? 2012, was it? Mariah Radin It was, Your Honor. I believe it's December 22nd. Judge Breyer And what you're saying is if he was doing—if he was incarcerated because of violation of probation of the misdemeanor charge, that would— Mariah Radin Given the— Judge Breyer  Mariah Radin Okay, I got you. Judge Breyer Sorry for the confusion.  Thank you. Judge Breyer All right. Aaron McCree-Lewis Good morning, Your Honors. May it please the Court, Aaron McCree-Lewis on behalf of the United States. Judge Tolman drew the Court's attention to exactly the right question that was pending before the District Court at the time of sentencing, which is whether the sentence imposed in Kern County Superior Court case 60361 resulted in the defendant's incarceration within 15 years of the offense of conviction in this case, specifically before—excuse me—whether or not the defendant was incarcerated after December 22nd, 1997. The provision of the guidelines that makes that so is Section 4A1.2. Judge Breyer Can I ask you a question? Judge Tolman You may. Judge Breyer Why did we get these pieces of paper and not get a rap sheet? You know, apparently there's no other case that anybody's aware of where this stuff, you know, was given to us. And it's not easy to understand that a rap sheet would have taken care of everything. Aaron McCree-Lewis When the defendant filed his sentencing position—  What? Aaron McCree-Lewis When the defendant filed his sentencing position, the argument that he made with respect to this accumulation of criminal history points was that there was no documentary evidence supporting the probation office's conclusion that the defendant was in custody within the 15 years. I contacted the probation office, which already had the A file, which included all of the rap sheets that were available to the government. The probation office sent to me and to defense counsel the records that I attached to the government's sentencing position as Exhibit A. Those records were sufficient for the limited purpose that the district court used them for. They are, for the reasons stated in the government's brief, reliable on their face for the very limited purpose of determining whether or not the defendant was in custody on this particular sentence within the 15 years. I'd like to draw the court's attention to what I consider to be an important concession. Defendant, counsel— I can't tell from all this what really happened, you know, if I look at these pages. Well, I happen to think that Judge Bates' interpretation— Yeah, but, you know, why not make it easy on everyone? Why not get a rap sheet? You're not telling me the government can't get a rap sheet. I'm not. The government, you know, the federal government's got more information than any other particular other source, huh? And if we'd have had that, I wouldn't have had to spend a lot of time looking at all this trying to figure it out. I've never seen this before. What was the concession that you were about to— Well, let me hear what he's got to say. Your Honor— I mean, why should we have to go through all of this? In other words, what I'm saying is, why should we have to go through all of this? Because we didn't get a good job. You know, you didn't make our life easier for us. You know, and we waste all this time going through all— We've got a lot of work to do. As I said at the sentencing hearing— What? As I said at the sentencing hearing, I wish that the government had a conviction record, some other document. Well, you can't get it anywhere? I received the defendant's sentencing position, I think, seven days before the sentencing deadline. I got the records that I could get from probation. Immediately sent them to the defendant and submitted them because I evaluated them to be reliable for the limited purpose. If I had had any question that this man had not been in custody on this sentence— No, no, what your question is, is not the issue here. Because it's our question, huh? And we're not saying that you didn't really believe that he was in custody. He probably was, you know. But we have these documents. We have these issues raised. And you just couldn't call up and get a rap sheet sent right away? I asked the probation office to give me everything that supported the conclusions. But why don't you call up the FBI and say, send me the guy's rap sheet? They sent it right away. Right? Isn't that right? They got all that. I mean, we got computers. We got everything these days. Anyway. Now, what about that confession? What about that confession? Defendant's counsel just conceded that the defendant was in custody in April of 1998. The only question now is on what sentence. Excerpt of records, page 70, contains the case number on which the revocation occurred. SC-60361, which is referenced in the PSR, which was the conviction that resulted in the sentence on January 12, 1996. And that's the Kern County case? Correct. Right. And that sentence, obviously, listed a page before. The reasonable inference is that the revocation occurred in that case. Can I ask you a question related to Judge Pragerson's inquiry? Yes. I'm looking at page SER3, page 3 of the pre-sentence report, counsel, paragraph 5, where the probation officer recites all the criminal record inquiries that were pursued in order to get the criminal history on this particular fellow. And it lists all the places that you would normally look. And is the stack of records that you got from the probation officer and the federal defender, the records that correspond to paragraph 5 of the pre-sentence report, or is there something more? My interpretation is that the last sentence of paragraph 5, the reference to the CDCR records, those are the records that the probation officer provided to the government and to defense counsel. The probation officer, obviously, has access to many databases and other sources of information and presumably used those to compile the other information in the PSR that is obviously not reflected on the movement histories. But for some reason, the probation officer didn't provide that extra documentation to you? Definitely did not. But I believe that is because the best information available to the probation office was, in fact, these records from the California Department of Corrections. Because the issue was whether or not the person was still in serving time on the Kern County conviction. Whether or not that sentence resulted in the defendant's incarceration within the 15-year period. That's exactly correct. I mean, I don't understand how the probation officer could have filled out all the remaining portions of the report that recounts all of his various arrests and dispositions without having had access to some kind of a criminal history, whether it's a conventional rap sheet or something else. I don't know. I suppose you could have a pile of court papers and you could try and figure it out yourself. And paragraph 5 mentions court records. Yeah, you didn't give the probation office the papers. The probation officer... Gave them to you. ...got to get his own papers. Following the defendant's guilty plea, the government provided its case file, the A file. To the probation office. Yeah, okay. The probation office obviously has access to information beyond that contained just in the A file. The NCIC database, I believe, is referenced in paragraph 5. Other sources. So the probation officer, instead of getting the rap sheet, used all this other stuff. Based on the addendum filed by the probation officer, I believe that's correct. For this discrete fact, yes. But you're not saying that there weren't other records that the probation officer had that could have been turned over to you, but that wasn't the question. The question was the one I framed earlier. I'm sorry. I'm going to try to answer that. Let me take another one. Let me rephrase that question. We, you don't know whether or not the probation officer may have had other criminal history records that were not included in what you were given. Based on paragraph 5 of the pre-sentence report, I believe that the probation office did have access to other records regarding the defendant's criminal history. Based on the addendum to the pre-sentence report and my conversations with the probation officer, in which I asked for the documentary evidence supporting the conclusion that the defendant was in custody within the time period, the basis for that assertion was the documents that were turned over to me that I gave to the defendant and submitted as Exhibit A. Okay. I think I understand. I think the answer to my question is yes, there were other documents, but I don't have them. So then you turned all these other sheets that we have here over to the defense counsel. I'm sorry, Your Honor. I did not hear you. When did the defense counsel get these detailed sheets? They were emailed to defense counsel at the same time they were emailed to me. Defense counsel was out of the office. I bait-stamped them and then sent them separately to him. So at the latest, I believe June 10th when I filed the government sentencing position, 14 days before the sentencing hearing. But if you just looked at those pages I held up, if you just looked at those alone, they're not that clear, are they? I think that they're clear enough to make the factual finding. But what I think isn't really clear. You think it's close enough for government work? No, Your Honor, not close enough for government work. I think it was a decision entrusted to the district court's discretion. And the district court on the record kind of clearly reflects this, did not just accept the records out of hand. She analyzed them. She discussed which entries corresponded to her conclusions and made the finding by a preponderance of the evidence that these records indicated that the defendant was in custody within the permissible period. I see that I'm over my time. Yeah, well. And the reason that the trial court, the sentencing court could find that this custody was traceable to the 1996 conviction is your reference to ER 70, where the record shows he was admitted to custody as a result of the Kern County criminal conviction. That is correct, Your Honor. And I would also note that that information is matched on ER 76, which Your Honor mentioned earlier, which shows January 12th, 1996, admitted offender with new AOJ, new felony commitment, Kern County. It does not list the case number, but the only Kern County conviction sustained by this defendant. But you know that the federal public defenders are very smart people. I do know that. And you know they're going to look for things, right? Because today's game, the U.S. Attorney's got all the marbles. Under the sentencing guidelines and the way things are going, you know. So they're going to look at everything very carefully, because that's their job. And so what was given to them was unusual, because usually they get the rap sheet. So now they got to go through this, and they're thinking all the time. That's their job. So it just made a lot of work for a lot of people. It would be simpler if they just followed the procedures with a rap sheet. I agree, Your Honor. Yeah. So anyway, we spend time and all that. This all adds to the gross national product. And so our economy's getting stronger by what you did. I'll ask no more questions. Thank you very much. Ms. Radin, I do have one question here. And based on ER-70, ER-76, it seems to me that the only conviction which precedes his entry into custody in 1998 is the Kern County conviction, which is numbered on ER-70 and is referred to on ER-76. You mentioned that he might be in custody because of another conviction. Which somehow would not be sufficient. What other conviction was that? Was that the 1997 misdemeanor conviction? Correct, Your Honor. But he wasn't in jail as a result of that 1998. He couldn't be in jail. I believe he would have had to have been in jail because he was here undocumented. And he had an arrest date. And he would have remained in custody. But I am speculating because I do not know why there was a delay between arrest and sentencing. But based on my experience, being here illegally, he would have had to have been in some form of custody. And there are movement histories. You mean he was in jail somewhere else? Not under the jail movement records that we have here? And I don't mean to avoid the question. I think we just don't know. And that's part of why. And why are you saying something you don't know? Problem. I believe based on the arrest date of June 1997, he was then convicted on February 13, 1998. He was here illegally. There are also movement histories from that period when he would have, before he was even sentenced to anything. But if he was arrested in June 1997 on a misdemeanor, a 148 false ID to a police officer misdemeanor, are you saying that he was kept in custody until the date of sentencing and then given 25 days more? He would have gotten credit for time served and would have been bounced the same day. Pardon me. He would have been released the same day. I don't know, Your Honor. And I don't think these documents sufficiently can answer those questions. What I'm after is any evidence that you might have in your possession that the crime for which he was serving time in April of 1998 was something other than the Kern County conviction in 1996. No, Your Honor. But I do believe that we don't know that his parole was revoked and he could have been on in there for a violation that was not sustained. Wouldn't the basis for the parole revocation have been the subsequent arrest for the 148? I don't know because these documents can't tell us that. But wouldn't that be a legitimate reason to revoke someone's parole, a commission of another offense while on parole? I believe that would be. And there are, I think the court's precedent, Langer specifically, found that rap sheets are reliable on the basis of there were no errors known in those documents. They were fingerprint matched. It would have had to have been wrong by two years. The parties agreed that all underlying documentation had been destroyed. He conceded his conviction. None of that exists here. He did not concede the parole revocation. There's no fingerprint matching. There are errors in these documents. He could not have been moved by CDCR after he has been deported to Mexico. And the parties certainly did not agree that better evidence was unavailable, such as a rap sheet, which did exist in this case, but was not the only source of the revocation are these documents. Did you have a rap sheet on him? The rap sheet was in the A file, Your Honor. It was? Yes. It was produced in the A file. And does it show any other arrests besides the ones we've discussed during the relevant time period? No, Your Honor. Okay. As to the best of my recollection, it's not in the record, but that would be my best answer. Thank you. No questions. Thank you. Oh. Okay. Do you know Max Radin? I don't, Your Honor. You know who he was? I don't believe I do. Please do. Well, you ought to check him out. I will check him out. He's a very famous law professor at Berkeley. I will look into it. I wish he were a feminine. He probably would have given you an A. Thank you very much, Counselor. Thank you. And that'll do it until we meet again.
judges: Pregerson, Tallman, Bea